# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1514V

|  |  |
|---|---|
| KIMBERLY STARNES,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: October 13, 2023 |

*L. Cooper Harrell, Turning Point Litigation, Greensboro, NC,* for Petitioner.

*Dorian Hurley, U.S. Department of Justice, Washington, DC,* for Respondent.

**DECISION AWARDING DAMAGES**[1]

On November 2, 2020, Kimberly Starnes filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a right shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on November 6, 2019. Petition, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below, and after holding a brief hearing, I award damages in the amount of **$80,032.06**, **representing $78,000.00 in actual pain and suffering, plus $2,032.06 in past unreimbursed expenses.**

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

While this case was awaiting medical review, Petitioner submitted a settlement demand to Respondent on June 2, 2021. ECF No. 16. Nearly one year later, on March 11, 2022, Respondent filed his Rule 4(c) Report conceding that Petitioner was entitled to compensation for her SIRVA. ECF No. 25. The same day, I issued a Ruling on Entitlement and ordered the parties to engage in damages discussions. ECF Nos. 26-27. But the parties were unable to resolve their disagreement, and they proceeded to filing briefs on damages. Petitioner filed a Memorandum in support of her request for damages on January 20, 2023. ECF No. 40. On March 6, 2023, Respondent filed his brief. ECF No. 41.

In late August 2023, I proposed this case for an expedited hearing on October 6, 2023, at which time I would decide the disputed issue of damages based on all evidence filed to date and any oral argument from counsel. ECF No. 43. The parties agreed, and the "Motions Day" hearing took place as scheduled. ECF No. 44; Minute Entry dated Oct. 10, 2023.[3] During the hearing, I made an oral damages determination. This Decision memorializes those findings and determinations.

## II. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594,

---

[3] As of the date of this Decision, the transcript of the October 6, 2023 Motions Day hearing has not been filed, but my oral ruling is incorporated by reference herein.

at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). The *Graves* court maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

### III.     Prior SIRVA Compensation Within SPU[5]

#### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2023, 3,304 SPU SIRVA cases have resolved since the inception of SPU on July 1, 2014. Compensation was awarded in 3,211 of these cases, with the remaining 93 cases dismissed.

1,834 of the compensated SPU SIRVA cases were the result of a reasoned ruling that petitioner was entitled to compensation (as opposed to a settlement or concession).[6] In only 173 of these cases, however, was the amount of damages *also* determined by a special master in a reasoned decision.[7] As I have previously stated, the written decisions setting forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable precedent setting forth what similarly-situated claimants should also receive.[8]

The data for all groups described above reflect the expected differences in outcome, summarized as follows:

---

[5] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[6] The remaining 1,377 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[7] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (1,632 cases) or stipulation (29 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

[8] Of course, even though *any* such informally-resolved case must still be approved by a special master, these determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

4

|  | Damages Decisions by Special Master | Proffered Damages | Stipulated Damages | Stipulated Agreement[9] |
|---|---|---|---|---|
| **Total Cases** | *173* | *1,632* | *29* | *1,377* |
| **Lowest** | $40,757.91 | $22,500.00 | $45,000.00 | $5,000.00 |
| **1st Quartile** | $70,203.12 | $62,825.18 | $90,000.00 | $38,134.81 |
| **Median** | **$92,299.83** | **$83,039.25** | **$130,000.00** | **$55,000.00** |
| **3rd Quartile** | $125,000.00 | $111,475.61 | $162,500.00 | $80,803.17 |
| **Largest** | $265,034.87 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 173 SPU SIRVA cases in which damages were the result of a reasoned decision, compensation for a petitioner's actual or past pain and suffering varied from $40,000.00 to $215,000.00, with $90,000.00 as the median amount. Only seven of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[10]

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination.

---

[9] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[10] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs.*, No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In six cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

### IV. The Parties' Arguments

The only disputed issue of damages is pain and suffering.[11] Maintaining that she continued to suffer shoulder pain for nearly three years (34 months) post vaccination and describing her pain as severe enough to warrant the suggestion of surgery as a last treatment resort, Petitioner seeks $120,000.00. Mem. at 12. She favorably compares the facts and circumstances of her case to those experienced by the petitioners in *Danielson*, *Leslie*, and *Dawson-Savard*, who received $110,000.00, $125,000.00, and $130,000.00, respectively for their past pain and suffering.[12] *Id.* at 12-15.

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $72,500.00. Response at 2. Emphasizing Petitioner's combined sixteen-month gap in treatment and rapid decline of pain to a moderate level within approximately one month of vaccination with only conservative treatment, Respondent argues that the facts and circumstances more closely resemble the circumstances of the petitioners in *George*, *Miller*, and *Edens*, who received $67,000.00, $75,000.00, and $60,000.00, respectively in past pain and suffering.[13] *Id.* at 14-15. He also maintains that this case is distinguishable from the cases cited by Petitioner, because of the injury's more mild nature and lack of unique characteristics warranting a higher award. *Id.* at 11-13.

### V. Appropriate Compensation to be Awarded

Here, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's

---

[11] The parties have agreed on an amount for past unreimbursed expenses in this matter ($2,032.06).

[12] *Danielson v. Sec'y of Health & Hum. Servs.,* No. 18-1878V, 2020 WL 8271642 (Fed. Cl. Spec. Mstr. Dec. 29, 2020); *Leslie v. Sec'y of Health & Hum. Servs.,* No. 18-39V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 8, 2021); *Dawson-Savard v. Sec'y of Health & Hum. Servs.,* No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020).

[13] *George v. Sec'y of Health & Hum. Servs.,* No. 18-426V, 2020 WL 4692451, at *2-3 (Fed. Cl. Spec. Mstr. July 10, 2020); *Miller v. Sec'y of Health & Hum. Servs.,* No. 20-604V, 2022 WL 3641716, at *5-6 (Fed. Cl. Spec. Mstr. July 22, 2022); *Edens v. Sec'y of Health & Hum. Servs.,* No. 19-1110V, 2020 WL 8457671, at *5-7 (Fed. Cl. Spec. Mstr. Apr. 26, 2021).

injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavit, filings, and all assertions made by the parties in written documents and at the expedited hearing held on October 6, 2023. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on October 6, 2023 (which is fully adopted herein), **I find that $78,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

With respect to severity and duration of the injury, Petitioner's medical records reveal a moderate, non-surgical SIRVA. While I credit Petitioner's arguments regarding the potential need for surgical intervention in the future, I cannot compare the facts of this case to other surgical SIRVA cases in awarding damages – where surgery *had* occurred. Particularly significant to my decision includes the evidence demonstrating Petitioner's treatment with her PCP within six days of her vaccination, subsequent treatment with an orthopedic surgeon, prescription for steroid medication, one cortisone injection, MRI – revealing "thinning, fraying, and shallow partial tearing[14] along the bursal surface of the supraspinatus tendon diffusely, subacromial/subdeltoid bursitis, and rotator cuff tendinosis," and participation in 16 PT sessions (including dry needling sessions). Additionally, she described severe pain at the beginning of her injury, which lasted for less than one month, and then significantly decreased to a moderate level for the duration of her lengthy treatment course (34 months with two gaps in treatment totaling 16 total months).

Petitioner had a reported pain level of a 9/10 on December 2, 2019. Ex. 3 at 12. Her pain seemed to peak at this point and then rapidly decreased to a 5/10 later that month, by December 20, 2019, with conservative treatment (oral steroids), only. *Id.* at 7. Petitioner's pain had "partially improved" (4/10) by the end of her first course of PT in May 2020. *Id.* at 4. Following an eight and a half month gap in treatment, on February 10, 2021, Petitioner returned for a "second opinion" after her pain had not subsided, although it had not worsened but remained fairly moderate and consistent with her pre-gap rating at a 6/10. Ex. 6 at 7. Thus, more aggressive treatment (injection or surgery) was recommended, but Petitioner declined (due, in part, to a purported fear of needles – *E.g.*, Ex. 3 at 12) and subsequently decided to forgo treatment for *another seven months* following this recommendation. *Id.* at 8. Indeed, Petitioner's pain seemed to stay somewhat consistently moderate during this second gap in treatment, because when she

---

[14] There is no evidence for or against whether this tear was believed by Petitioner's treaters to be vaccine-caused or a result of another factor.

returned for further treatment on September 20, 2021, her pain level was again rated at a moderate level of 5/10. Ex. 7 at 8. Petitioner ultimately received a cortisone injection and additional sporadic rounds of PT, with a final result of normal mobility except for limitations/tightness with reaching behind her head and back. Ex. 7 at 9; Ex. 8 at 10-18; Ex. 9 at 5. Her prognosis is generally "good." Ex. 10 at 5.

The severity and duration of Petitioner's pain, although significant (at times) and lengthy, is offset by the long temporal gaps in her treatment. As I noted during the expedited hearing, when petitioners in the Program have gaps in treatment, I weigh the reason for the gaps against evidence of a petitioner's purported pain. When a petitioner's history reveals several gaps, as here, I typically deem the decision to forego treatment as evidence that heavily underscores the mildness of the injury, since it could be endured without medical assistance for periods of time.

In making her request for pain and suffering, Petitioner relied on other non-surgical SIRVA cases wherein an award above $100,000.00 was appropriate. Petitioner's cited cases are outliers, however, and therefore not entirely persuasive. The petitioners in such cases established specific and unique factors to warrant such high awards not present under these circumstances. For example, the *Leslie* petitioner's injury required a bone marrow aspiration, a bone scan, and treatment with a specialist at the Mayo Clinic, outside of the petitioner's state. No. 18-39V, 2021 WL 837139, at*2-5, *9-11 (Fed. Cl. Spec. Mstr. Jan. 8, 2021). In that case, I determined that the uncertainty and stress of testing related to *Leslie's* bone erosion and possible ongoing infection supported a larger pain and suffering award. *Leslie* was able to show his SIRVA was unlike others in the Program. In both *Danielson* and *Dawson-Savard,* the petitioners treated for *severe* pain for a longer period of time (9+ months and 24+ months, respectively – compared to Petitioner's less than 1 month), *neither* had gaps in treatment, and had "poor" and permanent prognoses, respectively. No. 18-1878V, 2020 WL 8271642 (Fed. Cl. Spec. Mstr. Dec. 29, 2020); No. 17-1238V, 2020 WL 4719291 (Fed. Cl. Spec. Mstr. July 14, 2020). Petitioner here does not have comparable unique characteristics to support her requested award in excess of $100,000.00.

At the same time, Respondent's cited cases (two below his proffered amount and one above) are also somewhat unsuited – but albeit more factually analogous to Petitioner's case. The petitioner in *George*, for example, reported pain at a 4/10 level at most, and had a shorter overall injury course than Petitioner (including a significant gap in treatment), culminating in full ROM and 0-1/10 pain, compared to Petitioner's ongoing ROM limitations/tightness. No. 18-426V, 2020 WL 4692451 (Fed. Cl. Spec. Mstr. July 10, 2020). Similarly, *Edens* reported pain at a 5/10 (at most), had 4 cortisone injections (with relief), and did not require any treatment with formal PT. No. 19-1110V, 2020 WL 8457671, at *5-7 (Fed. Cl. Spec. Mstr. Apr. 26, 2021). Petitioner here underwent 16

8

(sporadic) PT sessions where dry needling was included. As I stated during the expedited damages hearing, I accept Petitioner's contention that dry needling is a form of serious treatment, more intrusive than conservative approaches like icing or ibuprofen. And although *Miller* underwent objectively more treatment than Petitioner, but over a shorter period of time, *Miller* delayed seeking treatment for two months – a fact which supports the proposition that *Miller's* initial SIRVA was less painful than Petitioner's. No. 20-604V, 2022 WL 3641716, at *5-6 (Fed. Cl. Spec. Mstr. July 22, 2022). Thus, Petitioner's actual pain and suffering award should be *higher* than the awards in those cases - $78,000.00.[15]

### VI.   Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $80,032.06, representing compensation for her actual pain and suffering and past unreimbursed expenses, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act.

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[16]

**IT IS SO ORDERED.**

                                    **s/Brian H. Corcoran**
                                    Brian H. Corcoran
                                    Chief Special Master

---

[15] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required.  See Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.